WILLIAM R. CORCORAN AND DOROTHY CORCORAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Corcoran v. Commissioner
Docket No. 13746-78.
United States Tax Court
T.C. Memo 1980-546; 1980 Tax Ct. Memo LEXIS 43; 41 T.C.M. (CCH) 508; T.C.M. (RIA) 80546; December 8, 1980
Paul T. Wright, for the petitioners. Jeff P. Ehrlich, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was tried before Special Trial Judge John J. Pajak pursuant to Rule 180, Rules of Practice and Procedure of the United States Tax Court. His report was served on the parties. No exceptions to the report were filed. After careful consideration, the Special Trial Judge's report, *45 which is set forth below, is adopted. REPORT OF SPECIAL TRIAL JUDGE *
PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioners' income tax for the years 1974 and 1975 in the amounts of $ 2,721.00 and $ 1,516.40, respectively, plus additions to tax under section 6653(a) [1] of $ 136.05 and $ 75.82, respectively. The issues to be decided are: 1. Whether the purported conveyance by petitioner William R. Corcoran of his lifetime services to a family trust was effective to shift the incidence of taxation on amounts representing compensation to him which were paid to the trust. 2. Whether other income reported by the trust should have been reported by petitioners under sections 671 through 677. 3. Whether any part of petitioners' underpayments of taxes for the years in issue were due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). *46 FINDINGS OF FACT Some of the facts have been stipulated.The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners, William R. Corporan (hereinafter referred to as William) and Dorothy (a/k/a Helene) Corcoran (hereinafter referred to as Dorothy) are husband and wife and resided in Scottsdale, Arizona at the time of the filing of their petition. On July 25, 1974, William executed, as grantor, a trust instrument entitled "W.R. Corcoran Family Trust (A Trust)". (Hereinafter the "Trust"). The trust form used by petitioners was one promoted by Educational Scientific Publishers (ESP). William was in contact with various persons connected with ESP. The trustees of the Trust were listed as William, Dorothy and Dorothy's mother, Dorothy T. Chamberlain. Dorothy T. Chamberlain never exercised any authority as trustee and resigned within three months because her property was not involved in the Trust. The purpose of the Trust, as set forth in the declaration of trust, was to accept real and personal properties conveyed to the Trust by its creator (William), including the use of his "lifetime services" and all remuneration therefrom. *47 This transfer was made so that William could "maximize his lifetime efforts through the utilization of his Constitutional Rights." The Trust was to be administered by its trustees, with a majority vote of the trustees required for expenditures (including compensation of the trustees). The Trust was established for a period of 25 years unless by unanimous vote the trustee would determine upon an earlier date or liquidate the Trust at any time "because of threatened depreciation in values, or other good and sufficient reason * * *." Upon liquidation, the assets of the Trust were to be distributed to its beneficiaries. On July 24, 1974, Dorothy executed documents conveying certain real and personal property to William. The real property was their personal residence. She also purported to convey her "lifetime services" to him. The conveyances were made with the understanding that the property was actually to be conveyed to the Trust in exchange for beneficial units in the Trust. On July 28, 1974, William executed document which purported to convey to the Trust "THE EXCLUSIVE USE OF [William's] LIFE TIME SERVICES AND ALL OF THE CURRENTLY EARNED REMUNERATION ACCRUING THEREFROM", *48 together with certain real and personal property.The real property was his residence and the personal property was not identified. One document purported to convey to the Trust properties of William "WHICH INCLUDE THE EXCLUSIVE USE OF THE LIFETIME SERVICES OF HELENE C. CORCORAN [Dorothy] AND ALL THE CURRENTLY EARNED REMUNERATION ACCRUING THEREFROM." In return for the various conveyance, William and Dorothy, after some paperwork, each became the owners of 50 units of beneficial interests in the Trust. The beneficial interests totaled 100 units. Ownership of a beneficial certificate did not give the holder any title or interest in, or right to manage, the trust property. This was set forth in the certificates of beneficial interest which stated that the benefits conveyed consisted solely of the "emoluments as distributed by the action of the Trustees and nothing more." Petitioners at all times retained full control over the assets of the Trust, and as trustees of the Trust, were empowered to "do anything any individual may legally do" with those assets as specified. After creation of the Trust, petitioners continued to utilize the property which had been transferred to the *49 Trust, together with other property leased to the Trust, for their own benefit and in exactly the same manner as it would have been used had the Trust not been created.The financial records of the Trust were totally inadequate to account for income and expenses of an entity separate and apart from the petitioners. On their own tax return petitioners reported consulting fees from the Trust. Both petitioners wrote checks from the Trust account to pay for their own ordinary living expenses. After the creation of the Trust, the Trust reported all service income earned by William. This included assignments of salary, retirement benefits and real estate commissions. Dorothy was unemployed. In 1974 sick pay of $ 1,260 was paid to William by his employer principally during a period after creation of the Trust. This sick pay was excluded on petitioners' return. For 1975 the Trust also reported dividend and interest income realized from assets conveyed to it. The Trust deducted from income the cost of maintaining all of the personal assets of William which had been transferred to it, as well as certain personal expenditures of petitioners. Included in the deductions were costs *50 of maintaining petitioners' residence. On their 1974 tax return, petitioners deducted $ 1,750 as a "COST TO MAINTAIN AND CONSERVE ASSETS AND/OR MINIMIZE TAXES (SEC. 212)." This expense was the cost of buying the ESP Trust package. This included legal representation if an Internal Revenue Service audit resulted in litigation as it did. The $ 1,750 payment was made through a paper trust entitled the "W.R. Corcoran Educational Trust" which instrument had been executed by William. The sole reason for the execution of this instrument was as a device to permit the payment of the $ 1,750. William wrote a $ 1,750 check to the "W.R. Corcoran Educational Trust" and delivered it to Glen Nelson, one of the ESP representatives. The check was endorsed "Glen B. Nelson, Trustee, W.R. Corcoran Educational Trust." Respondent determined that all income reported by the Trust should have been reported by petitioners. Respondent disallowed the $ 1,750 deduction claimed as an expense of setting up the trust because it did not meet the requirements for deduction under section 212. Respondent also determined that petitioners were liable for the addition to tax under section 6653(a). Certain other *51 adjustments were made which are not in issue in this case. Most of those adjustments were made by respondent in an effort to unwind the machinations of petitioners in their tax avoidance efforts and to limit their tax liability to the amount they owe. OPINION For all the reasons set forth below, respondent's determination must be sustained.[2]
*52 Petitioners have executed many documents in perpetuation of another so-called family trust tax avoidance scheme. We cannot paper over the principle that income is taxable to the one who earns it. . Repeatedly, trust devices similar to that of petitioners have been found to be anticipatory assignments of income which did not shelter the wage earner from taxation upon his income regardless of the effect of these assignments under State law. See, e.g., , affd. ; , appeal dismissed (10th Cir., July 31, 1980); ; ; , affd. , cert. denied . These principles apply to assignments of wages, retirement benefits and real estate commissions. We have no hesitancy in sustaining respondent's determination. Respondent included *53 in petitioner's income all income which had been reported by the Trust. In 1974 this income was salary paid to William by his employer. In 1975 this income included not only his salary but retirement income, real estate commissions, dividends and interest income. We hold that under the grantor trust provisions of sections 671 through 677 all such income is taxable to petitioners even if the trust had some economic substance. ; Aside from all else, we are compelled by the facts in this record to conclude that the Trust was void for Federal income tax purposes because it lacked economic realty. Turning to the claimed deduction of $ 1,750, we find William unhesitatingly used a fictional "W.B. Corcoran Educational Trust" to funnel this payment to an ESP representative. Whether this was a devious attempt to conceal the payment does not control the question of deductibility. A careful review of the entire record in this case leads us to conclude that petitioners' purchase of the ESP package was motivated solely by personal *54 reasons.For the same reasons discussed in earlier cases, we find that the amount in question is a nondeductible personal expense. [3] See ; and , appeal dismissed (9th Cir., January 21, 1980). Section 6653(a) [4] provides for the imposition of a five percent addition to tax for negligence or intentional disregard of rules and regulations. William claimed at trial that he set up the Trust not only to avoid taxes but to also avoid probate. We are not required to believe unsupported self-serving statements made by a petitioner without evaluating it in light of all the facts and circumstances in the record. . Based upon this record, we are convinced that the primary, if not sole, purpose of the petitioners was to disregard the tax laws in *55 their attempt to avoid application of such laws to them.William utilized the services of the ESP representatives in developing documentation supporting the tax avoidance scheme. Yet petitioners themselves disregarded the purported assignments of lifetime services when they reported so-called commission and consulting fees paid by the Trust on their individual tax returns. Petitioners had no qualms about utilizing a fictional trust to pay a fee to an ESP representative. Petitioners knew what they were doing and intentionally disregarded the tax laws. The evidence quite clearly fails to show otherwise. We find that petitioners have failed to carry their burden of proof on this issue. *56 To reflect the foregoing, Decision will be entered for the respondent. Footnotes
*. This report is prepared pursuant to Rule 182(b), Rules of Practice and Procedure of the United States Tax Court.↩
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise indicated.↩
2. The Court observes that this case and two others, by agreement of the parties, are test cases for many other petitioners whose pending cases involve issues similar to those in the test cases. These three test cases are -    , -    , and -    . In order to conserve the time of this Court and the parties, petitioner's and respondent's counsel in the other cases have stipulated that their cases will be governed by various issues decided in the test cases. This procedure is realistic and practical and is encouraged by the Rules and practice of this Court. The Court has individually reviewed the ostensibly different ESP trusts involved in the Antonelli, Basham and Corcoran cases. We found their operative provisions to be most similar in nature. The ABC's to be derived from our holdings in Antonelli, Basham and Corcoran↩ are that the arrangements reflected in ESP trusts do not shelter a taxpayer from taxation.
3. It would also appear that the expense was a nondeductible capital expenditure under section 263. There is no question but that part of the expense was to cover contingent legal services.See .↩
4. SEC. 6653.FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩